898 P.2d 1005

**COMMUNITY GUARDIAN BANK, Plaintiff–Appellee,**

v.

**Janice HAMLIN, Defendant–Appellant.**

No. 1 CA–CV 91–0379.

Court of Appeals of Arizona, Division 1, Department C.

June 29, 1995.

As Corrected July 10, 1995.

Killian, Nicholas, Fischer, Wirken, Cook & Pew, P.L.C. by Charles W. Wirken, Mesa, for plaintiff-appellee.

J. Kent MacKinlay, Mesa, for defendant-appellant.

## OPINION

GRANT, Judge.

This is a direct appeal of the trial court's order approving wage garnishment of the employer of Defendant/Appellant, Janice Hamlin. This appeal was stayed for an extensive period of time by an order of the bankruptcy court. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes Annotated ("A.R.S.") sections 12–120.21(A)(1) and 12–2101(F)(3).

## FACTUAL AND PROCEDURAL BACKGROUND

Jerry Hamlin operated a water purification business, "WaterMaid", that had a working relationship with Water Sciences. A contract that the two parties negotiated never became enforceable because Water Sciences never received "funding", a condition precedent to contract formation. On February 5, 1990, Water Sciences requested that Community Guardian Bank ("Guardian Bank"), Plaintiff/Appellee, transfer $396 in the name of Jerry Hamlin to Jerry's bank account at Valley National Bank. The bank account was community property. However, Guardian Bank mistakenly transferred $39,600. The money was not returned to Guardian Bank, despite numerous demands. Jerry Hamlin admits to spending the money for parts and supplies for his water vending business, promotion of the business, a mortgage payment, utilities bills, department store bills, payments to his church, and medical bills. In her affidavit, Janice Hamlin denied knowing about the transfer of money or how it was spent.

Guardian Bank filed a complaint against "Jerry Hamlin and Janice Hamlin, his wife" on May 8, 1990. The Bank alleged Conversion, Unjust Enrichment, and Racketeering. Jerry Hamlin entered an Answer which claimed to be on behalf of himself and Janice, but Janice did not sign the Answer. The court held that "the answer filed on June 21, 1990, which purported to be an answer filed on behalf of Jerry Hamlin and Janice Hamlin is ineffective as to Janice Hamlin in that said answer does not bear the signature of Janice Hamlin." A default judgment was then entered against her on all three counts on August 16, 1990.

Janice moved to set aside the default judgment on September 11, 1990. On November 1, 1990, the trial court ruled that the default judgments for Conversion and Racketeering should be set aside, but the court did not set aside the default judgment on the Unjust Enrichment count. The trial court also ruled that "her obligation to make restitution to plaintiff is a community obligation and is not her separate obligation."

A writ of garnishment was served by Guardian Bank against Janice Hamlin's employer on November 13, 1990. Subsequently, Janice and Jerry Hamlin's divorce, DR 90–93010, became final on December 5, 1990. After the divorce, Janice moved to quash the writ of garnishment and requested a hearing concerning the legal status for garnishment of her wages. On January 7, 1991, the trial judge explained in a minute entry that the Unjust Enrichment Judgment was a community obligation that became the separate obligation of each spouse after divorce. The

court further explained that its November 1 order was not intended to preclude collection of the debt from Janice Hamlin's separate property after divorce. The court later stated that the law presumes that both Jerry and Janice Hamlin benefitted from the money Jerry obtained from Guardian Bank. On April 12, 1991, the trial court entered an Order of Continuing Lien on Nonexempt Earnings, requiring Janice's employer to pay all garnished wages to Guardian Bank. Janice Hamlin filed a timely appeal of this order. The sole issue on appeal is whether Guardian Bank may garnish Janice Hamlin's post-divorce wages.

### ISSUE

Is an obligation of the marital community, which is not a separate obligation of a party, recoverable from the post-divorce wages of that party through garnishment?

### DISCUSSION

■ Because the issue on appeal is one issue of law, our standard of review is *de novo*. *Tovrea Land and Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47 (1966). To determine whether Guardian Bank's writ of garnishment is valid, we must determine the character of the claim against Janice. First we must decide whether the Unjust Enrichment Judgment against Janice and Jerry Hamlin was a judgment against the community, and if so, whether it became a community obligation. If the judgment was a community obligation, we must then determine whether the obligation follows Janice after divorce.

### I. A.R.S. section 25–215 Does Not Apply To This Case

■ Both parties attempt to construe A.R.S. section 25–215 to their advantage. However, section 25–215 does not apply to this case. The section governs the liability of community and separate debts of spouses who are still married. The language of the section clearly contemplates an existing marriage, and mandates how property should be used to satisfy debts incurred during marriage and collected while the spouses are still married. A divorce court has the inherent power to allocate both community property and debts upon dissolution. *Cadwell v. Cadwell*, 126 Ariz. 460, 461–62, 616 P.2d 920, 921–22 (App.1980). The court of appeals has further held that the divorce court has "great discretion" when apportioning both community assets and obligations. *Neal v. Neal*, 116 Ariz. 590, 594, 570 P.2d 758, 762 (1977); *Neely v. Neely*, 115 Ariz. 47, 49, 563 P.2d 302, 304 (App.1977). Therefore, section 215 does not apply.

### II. Responsibility For The Unjust Enrichment Judgment

Counsel for Janice Hamlin argues that Jerry Hamlin was the wrongdoer in this case and that for this reason Janice should not be responsible for his tortious conduct. This argument mistakenly assumes that Jerry's tort of conversion is the only act that can hold Janice liable. To the contrary, this case hinges on whether the default judgment against her for unjust enrichment will allow Guardian Bank to garnish her post-divorce wages. Therefore, we look to basic principles of Arizona law concerning unjust enrichment and community property.

■ In Arizona, five elements must be proved to make a case of unjust enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of justification for the enrichment and the impoverishment and (5) an absence of a remedy provided by law. *City of Sierra Vista v. Cochise Enter., Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (App.1984); *Stapley v. American Bathtub Liners, Inc.*, 162 Ariz. 564, 568, 785 P.2d 84, 88 (App.1989). To create a community obligation from an unjust enrichment judgment, the plaintiff, Guardian Bank must plead and prove that the community was enriched.

#### A. Community Obligation

A default judgment was initially entered against Janice Hamlin for unjust enrichment, conversion, and racketeering on August 16, 1990. After her motion to set aside the default judgment, the trial judge set aside the conversion and racketeering counts.

However, the trial judge did not set aside the default judgment for unjust enrichment.

■ A default judgment entered against Janice Hamlin creates the legal effect of an admission by her to the material allegations in the complaint. *Postal Ben. Ins. Co. v. Johnson,* 64 Ariz. 25, 33, 165 P.2d 173, 178 (1946); *U–Totem Store v. Walker,* 142 Ariz. 549, 553, 691 P.2d 315, 319 (App.1984); *Hawke v. Bell,* 136 Ariz. 18, 20, 663 P.2d 1009, 1011 (App.1983). The key, then, to whether a community obligation exists is whether the complaint sufficiently alleged that the community was obligated to repay the mistakenly transferred money. The complaint alleged, at paragraph 2, that:

At all times material hereto the defendants were husband and wife acting on behalf of and for the benefit of their marital community.

Paragraph 9 of Count Two Unjust Enrichment, alleged:

Defendants, by their conduct, have been unjustly enriched at plaintiff's expense.

We conclude that the plaintiff, Guardian Bank, sufficiently plead that the community was unjustly enriched. Therefore, the default judgment established a community obligation.

**B.   Division Of Community Obligations**

■ A divorce court has the statutory power to divide the community assets and obligations. A.R.S. § 25–318(A). *Cadwell,* 126 Ariz. at 461–62, 616 P.2d at 921–22; *Spector v. Spector,* 17 Ariz.App. 221, 227–28, 496 P.2d 864, 870–71 (1972). However, the court's allocation of community obligations does not affect the rights of third party creditors. *See Lee v. Lee,* 133 Ariz. 118, 123–24, 649 P.2d 997, 1002–03 (App.1982). The allocation does fix responsibility between the parties for the debt and can be used by one spouse to sue the other for contribution, if necessary. *Cadwell,* 126 Ariz. at 462, 616 P.2d at 922. Because third party creditors, including judgment creditors, cannot be bound by the divorce allocation, we are not concerned in this case with how the community obligations were allocated by the judgment of dissolution, we are concerned only with whether the Unjust Enrichment Judg-

ment created a valid debt against the community for which Janice is jointly liable. We have already concluded that the express terms of the complaint and default judgment create a community obligation.

**C.   Joint Liability for Community Obligations**

■ The question we must resolve is who remains liable, after divorce, for the community obligation to Guardian Bank. The answer to this question is quite clear in Arizona: both former spouses remain jointly liable for community obligations after divorce. Community debts not allocated by a divorce decree remain the joint obligations of the parties. "The allocation of community liabilities determines the rights and obligations of parties before the court only with respect to each other." *Lee v. Lee,* 133 Ariz. at 124, 649 P.2d at 1003. A creditor is not bound by the allocation. *See id.* at 123, 649 P.2d at 1002. *Fischer v. Sommer,* 160 Ariz. 530, 531, 774 P.2d 834, 835 (App.1989); *Jankowski v. Jankowski,* 114 Ariz. 406, 407, 561 P.2d 327, 328 (App.1977). In *Ellsworth v. Ellsworth,* this court held that "the wife should be liable, as between her former husband and herself, to the extent of one half of any such omitted community obligations...." 5 Ariz.App. 89, 92, 423 P.2d 364, 367 (1967).

■ The record is silent regarding whether there was a special allocation of this obligation at dissolution. However, because such an allocation would only give rights of contribution to Janice, it does not affect the validity of Guardian Bank's right to pursue collection from both former spouses jointly. Guardian Bank can therefore garnish the separate property wages of Janice Hamlin to satisfy her community obligation of restitution. Divorce does not absolve spouses of their community obligations. *See, e.g., Ellsworth,* 5 Ariz.App. at 92, 423 P.2d at 367. If Guardian Bank collects more than half of the amount due from Janice, or more than the allocation (if any) made in the Judgment of Dissolution, then she has a right to seek contribution from Jerry Hamlin. For now, she remains jointly liable to make restitution

for the money mistakenly transferred to the Hamlins' community bank account.

Because the judgment for unjust enrichment was a community obligation, we must uphold the trial court's order of April 12, 1991.

Affirmed.

NOYES, P.J., and McGREGOR, J., concur.